IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL LEE LUCAS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) Civil Action No. 14-1544 |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 28th day of March, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability

to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her applications for DIB and SSI on October 5, 2011, alleging disability beginning on March 10, 2010, due to fibromyalgia, polycystic kidney disease, depression and shoulder problems. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on June 4, 2013, at which plaintiff appeared and testified while represented by counsel. On June 26, 2013, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on September 23, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has a high school education through a general equivalency degree, was 52 years old when the ALJ issued his decision, and is classified an individual closely approaching advance age under the regulations. 20 C.F.R. §§404.1563(d), 416.963(d). Plaintiff has past relevant work experience as a nursing assistant, waitress and paralegal, but she has not engaged in substantial gainful activity at any time since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ first found that plaintiff suffers from the severe impairments of the residuals of a left shoulder surgical repair, fibromyalgia, myofascial pain syndrome, cervicalgia, polycystic kidney disease, dysthymic disorder, anxiety disorder and adjustment disorder with mixed anxiety and depression; however, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ next found that plaintiff retains the residual functional capacity to perform light work with a number of additional limitations. Plaintiff is precluded from crawling or climbing ropes, ladders or scaffolds and she is restricted to occasional balancing, stooping, kneeling, crouching and climbing ramps and stairs. In addition, plaintiff is limited to occasionally using her left dominant arm to push, pull and reach overhead, but she is not limited in pushing, pulling or reaching with her right arm. Plaintiff also must avoid concentrated exposure to vibration and temperature extremes, and she must avoid all exposure to unprotected heights, dangerous machinery and similar workplace hazards. Further, plaintiff is limited to understanding, remembering and carrying out simple instructions and performing simple, routine tasks. She is restricted to only occasional and superficial interaction with co-workers and the public, occasional supervision and no work that involves sales or negotiation. Finally, plaintiff requires work in a low stress environment that does not involve production rate pace, but rather goal oriented work with only occasional and routine changes in the work setting (collectively, the "RFC Finding").

The ALJ concluded that plaintiff is unable to perform her past relevant work because it exceeds her residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as an office helper, mail clerk or light unskilled packing jobs. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial

AO 72
(Rev. 8/82)

gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity.[1] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh certain medical opinions and evidence; (2) the RFC Finding does not account for all of plaintiff's limitations; (3) the ALJ posed an incomplete hypothetical question to the vocational expert; and (4) the ALJ did not properly evaluate plaintiff's credibility. After reviewing the record, we conclude that plaintiff's arguments are without merit.

Plaintiff first argues that the ALJ failed to properly weigh the medical opinion of her pain management physician, Dr. Brinda Navalgund. Dr. Navalgund indicated on an Employability Assessment Form for the Pennsylvania Department of Public Welfare that plaintiff was permanently disabled. (R. 584). Dr. Navalgund also completed a Physical Capacity Evaluation form on which

---

[1]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a)(1), 916.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

she indicated that with normal breaks, plaintiff could sit 4 hours and stand 2 hours in an 8-hour workday, but she would need to lie down 4 hours during the workday. (R. 623-24). According to Dr. Navalgund, plaintiff could lift 5-10 pounds, but she could not push and pull and she should avoid various environmental conditions. (R. 624). The ALJ did not give weight to Dr. Navalgund's opinion that plaintiff is permanently disabled, or that she could not sit and stand with normal breaks and would need to lie down during the workday. (R. 26). However, as reflected by the RFC Finding, the ALJ gave some weight to Dr. Navalgund's opinion that plaintiff was limited with pushing and pulling and should avoid exposure to environmental conditions and workplace hazards. (R. 26).

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). Under this standard, the ALJ properly analyzed and weighed Dr. Navalgund's opinion of plaintiff's physical capabilities.

As an initial matter, the ALJ was not bound to accept Dr. Navalgund's opinion set forth on the state welfare form that plaintiff was permanently disabled. Whether plaintiff was considered to be disabled for purposes of receiving state welfare benefits is irrelevant because another agency's determination regarding disability is not binding on the Acting Commissioner. See 20 C.F.R. §§404.1504, 416.904. Thus, Dr. Navalgund's conclusory opinion of permanent disability on the state welfare form was in no way dispositive of the ALJ's analysis in this case.

Likewise, the ALJ correctly determined that some of Dr. Navalgund's findings regarding plaintiff's physical capabilities set forth on the Physical Capacity Evaluation form were not substantiated by her treatment records. Dr. Navalgund's records describe plaintiff's left shoulder

problems, which the ALJ accounted for by restricting plaintiff's pushing and pulling and overhead reaching. However, Dr. Navalgund's treatment records do not document findings that support the restrictions she assessed for plaintiff's ability to sit and stand during the workday or purported need to lie down. (R. 430-31, 434-35, 591-92, 596-98, 600-03, 606-07, 610-11, 614, 618-19, 622). Accordingly, the court finds no error in the ALJ's consideration and weighing of Dr. Navalgund's opinion.

Plaintiff next complains that the ALJ improperly disregarded GAF scores of 50-55 contained in the record. (R. 531, 547). Plaintiff is incorrect.

GAF is a numeric scale that has been used by mental health clinicians and physicians to rate subjectively the social, occupational and psychological functioning of adults. However, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale as a measurement tool. See Hughes v. Commissioner of Soc. Sec., 2016 WL 231676, at *2 n.2 (3d Cir. Jan. 20, 2016) (noting that DSM-5 abandoned the GAF scale). Moreover, courts have recognized that a claimant's GAF score is not determinative of disability. See Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009) (recognizing that GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and determining that a low GAF score is not conclusive evidence of a mental disability); Wind v. Barnhart, 2005 WL 1317040, *6 n.5 (11th Cir. 2005) (noting that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs).

Although an individual's GAF score alone is not controlling, the ALJ's decision makes clear that he considered plaintiff's GAF scores, but determined they only were a snapshot of her functioning at a particular point in time. (R. 26). Rather than rely on GAF scores, the ALJ gave significant weight to the opinion of the consultative psychological examiner, Dr. Martin Meyer, and

AO 72
(Rev. 8/82)

- 6 -

some weight to plaintiff's counselor/therapist. (R. 26). The ALJ then relied on their assessments of plaintiff's ability to handle the mental aspects of work in formulating the mental limitations he incorporated into the RFC Finding. Accordingly, we find that the ALJ appropriately considered evidence relating to plaintiff's mental functioning, including GAF scores.

Plaintiff next argues that the RFC Finding fails to account for Dr. Navalgund's opinion of plaintiff's physical capabilities, including her need to lie down during the workday. As already explained, the ALJ properly considered, weighed and rejected certain portions of Dr. Navalgund's opinion, thus the ALJ was not required to include in the RFC Finding any unsubstantiated limitations she identified.

Plaintiff also argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not include a limitation for plaintiff's purported need to lie down during the workday. As discussed above, the ALJ properly discounted Dr. Navalgund's opinion on that matter, thus there was no need for the ALJ to incorporate such a restriction in the hypothetical question.

An ALJ's hypothetical question to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ's hypothetical incorporated all of plaintiff's limitations resulting from her impairments that were supported by the evidence of record, including all of the factors that were the basis of the RFC Finding. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform work that exists in the national economy.

Plaintiff's final argument challenges the ALJ's evaluation of her credibility. According to plaintiff, Dr. Navalgund's treatment records indicated that she suffers from chronic pain, thus the

ALJ should have found her complaints of pain fully credible and determined that she is disabled. Contrary to plaintiff's position, although one may experience constant and uncomfortable pain, it may not be of disabling severity. See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). In this case, the ALJ thoroughly evaluated plaintiff's complaints of pain and assessed her credibility in accordance with the Regulations.

As required by the Regulations, the ALJ evaluated plaintiff's credibility by considering all of the relevant evidence in the record, including plaintiff's own statements about her symptoms and limitations, her activities of daily living, the medical evidence of record, the extent of plaintiff's treatment and the opinions of physicians who treated and examined her. See 20 C.F.R. §§404.1529(c)(1) and (c)(3), 416.929(c)(1) and (c)(3); Social Security Ruling 96-7p. The ALJ then considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect her ability to work. 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4). The ALJ concluded that the objective evidence is inconsistent with plaintiff's allegation of total disabling limitations, and thus determined that plaintiff's testimony regarding her pain and limitations was not entirely credible. (R. 23). This court finds that the ALJ adequately explained the basis for his credibility determination, (R. 23-26), and is satisfied that such determination is supported by substantial evidence. See Schaudeck v. Commissioner of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999) (an ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony).

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

s/ Gustave Diamond  
Gustave Diamond  
United States District Judge

cc: Christine M. Nebel, Esq.  
220 South Main Street  
Suite D  
Butler, PA 16001

Christy Wiegand  
Assistant U.S. Attorney  
700 Grant Street  
Suite 4000  
Pittsburgh, PA 15219